and Mr. Burke is it? Lyonsburg, your honor. All right. Whenever you're ready, we'd be happy to hear from you.      Thank you. Thank you. Thank you. Yes, your honor. May it please the court. My name is Kyle Lyonsburg and I represent the appellants. The district court's dismissal of this case for lack of ripeness should be reversed because the court relied on the DC Circuit's opinion in O'Connor, which is flatly inconsistent with this court's precedence in both Cooksey and in Kenney. In Cooksey, this court explained that for First Amendment pre-enforcement challenges, courts must look at ripeness and standing through the same lens. And in Kenney, this court explained that a plaintiff can demonstrate that a pre-enforcement First Amendment challenge is justiciable in two ways. First, if a plaintiff has an intention to engage in conduct that is prescribed by a statute and there exists a credible threat of prosecution. And second, if there is a sufficient showing of self-censorship, which occurs when a claimant is chilled from exercising his right to free expression. Plaintiffs here meet both tests. First, plaintiffs submitted affidavits indicating that two of their members wish to engage in speech that was prescribed by the government's policy, both on the issue of impeachment and on the issue of the term resist. And as this court has noted, there is a presumption when there is a non-moribund statute that facially restricts expressive activity. It presents a credible threat of prosecution. Such a threat exists here. What speech are we talking about here? Your Honor, this would be discussion of the impeachment of former President Trump and use of the term resist while in the workplace. Have they engaged in the speech? No, Your Honor, they have not. Both of our employees submitted affidavits saying that they wished to engage in the speech and they thought it was an important issue. And yet they did not out of fear that they would be prosecuted by the Office of Special Counsel. Well. It seems to me that the speech I mean, it seems to me that the speech that they that they wish to engage in would be would be permitted. Your Honor, at least under the revised OSC guideline. Your Honor, there is certainly an open question there with respect to impeachment. The Office of Special Counsel's guidance said that discussing impeachment would be permitted and expressing an opinion on whether or not President Trump should have been impeached was. So what do we I don't understand. What are we talking about here? Discussion of impeachment and resistance would be permitted. Well, Your Honor, for impeachment, the policy also said that advocating for impeachment would not be permitted. And plaintiff's members are entirely unclear on whether speech crosses the line from discussing impeachment to advocacy. Our employees are not sure whether they can say President Trump should be impeached, if that would be permissible, if it is important for the country that President Trump is impeached would be permissible. It is very unclear when these types of expression, the speech would cross the line in OSC's opinion from an opinion on whether he should be impeached to advocacy. And one of our issues here is that the vagueness of the policy means that employees are likely to refrain from speech rather than risk violating the policy and risk potential termination from the federal government. But wasn't that basically a congressional judgment that was made in the Hatch Act and they gave or Congress gave OSC the authority to implement it or at least in the initial stage to provide guidance. And so we're talking about basically a federal statute and a scheme that's been set up here. And these OSC advisory opinions, you know, we have an advisory body in the federal judiciary, the Code of Conduct Committee, and they issue advisory opinions all the time. And a lot of them are not perfectly clear. But if all of that, all that's going to give rise to a First Amendment suit or some kind of suit, that's quite a lot of litigation, isn't it? Your Honor, I have two brief points in response to that. The first would be that one distinction here between the code of conduct arm for the federal courts and the Office of Special Counsel here is that the Office of Special Counsel are the prosecutors for any proposed violations. So this would be more akin to DOJ claiming that a certain conduct would violate a statute and subject a citizen to prosecution. For example, in cases of access to abortion clinics, if DOJ issued a policy statement saying that any protesters that were within five miles of an abortion clinic. Prosecution for something like that would be very, very rare. Yes, Your Honor, but as this court has said, there is a presumption that a non-moribund statute that restricts expressive activity presents a credible threat. And Your Honor, my second response. Excuse me, Judge Rushing had a question. I don't mean to cut you off, but I just want to clarify. So we're all talking about the same thing. This policy, this guidance is no longer in force, right? So you have an argument about, you know, maybe they could still prosecute for past conduct. But when you're talking about your clients currently don't know what they're allowed to say, that's no longer the case. Right, because now they can say whatever they want. That is correct, Your Honor. In that context, I was referring to when the policy was in force. But when we're talking about ripeness, we need to be talking about what's currently in place. What's currently in front of this court is the policy is no longer in effect. Your Honor, I believe this ties a bit into the government's argument on mootness. And the governing standard there is because OSC voluntarily changed the policy. But are we at the point now of being asked to write an advisory opinion upon an advisory opinion? I mean, is one advisory opinion on top of another advisory opinion? The first one being the OSC opinion and the second one being ours. Your Honor, the only opinion that we are asking this court to issue today is that plaintiff's claims were right. Any discussion of the merits of their arguments against the policy when it was in force and a potential future injunction against reinstituting the policy would be best served by the district court. What is the chill now? Your Honor, there is no current chill. However, because OSC voluntarily removed the policy and got rid of it, this case still presents a live controversy because of the self-censorship. That affects your ripeness, right? If there's no chill, there's no impact going forward. That's not just a question of mootness. That affects the ripeness of your case. Your Honor, we would contend that the ripeness was established at the time the case was filed. Mootness circles back into ripeness on some occasions. As a matter of fact, quite frequently. Sometimes you think of mootness and ripeness as separate concepts, but they're interrelated. Yes, Your Honor. We completely agree. Because if the case is moot to the degree that this one is, then it probably is unripe until a concrete controversy comes along. I'm just bothered by the lack of concreteness. I don't understand exactly what they said. I don't think they said anything. It seems to me what they were going to say was probably permitted. I'm just concerned about gumming up the system that Congress has set up. One thing that strikes me about the system is that it seems to contemplate, initially, OSC issuing an opinion. The opinions are actually supposed to facilitate First Amendment expression, not to quash it. The whole purpose of these opinions was to provide a safe harbor and to let employees know, look, it's fine to do this. And, you know, if we start litigating all this stuff, then OSC in the Hatch Act contest and all kinds of... I mean, the federal government works a lot of times with just this advisory opinion. And it serves a useful purpose because it gives employees notification of what they can and can't do. And it's very comforting sometimes to know that you can do something rather than having to guess and guess. So if we litigate every advisory opinion and say, oh, your language is somewhat less than precise and everything, there are going to be fewer of these advisory opinions issued. And a very useful tool is going to be compromised. And people are going to, without the advisory opinion, people are going to be guessing at a lot more than they're guessing at now, which seems pretty clearly, the opinion now seems pretty clearly to authorize the speech you want to make. And more power to you. I'm glad it does. But the other question here is in addition to the concern about compromising what is a very practical and useful purpose throughout the federal government. These things go, as I understand it, from OSC, and then OSC receives a complaint. And maybe it investigates. Most of the times it ends with action. Sometimes there's a warning letter. Very occasionally, rarely, there's a prosecution before the Merit Systems Protection Board. And then the Merit Systems Protection Board issues an ultimate opinion on whether the Hatch Act was violated. And then if you don't like that, you can go over to the federal circuit. But Congress has set up a fairly detailed and reticulated step-by-step scheme for resolving Hatch Act controversies. As I say, it goes from OSC to MSPB and then to the federal, which resolves these cases all the time. And I don't see what business we have in sort of jumping into that. And I started reading this stuff and saying, I feel like I've been asked to crash the party. Congress has set up a scheme. It doesn't include us. And we're going to go barreling in? I mean, I don't get it. Law is confusing enough as it is without having too many chefs in the kitchen. And it seems to me that the designated chefs have been OSC, MSPB, and the federal circuit. So why should we mess around with the legislative scheme? Your Honor, I would like to respond to that in two points. First, discussing your question about the beneficial nature of the advisory opinions. And second, about the scheme set up by Congress. With respect to the beneficial nature of the advisory opinions, I think Judge Mitka in dissent in the D.C. Circuit's case in O'Connor makes our point, which is that a special counsel cannot reasonably fear being hailed into court for issuing an advisory opinion that condoned proposed activity. And that is the kind of opinion that is valued by the Supreme Court for actually benefiting and preserving First Amendment rights and ensuring that the Hatch Act does not violate federal employees' First Amendment rights. Where the Office of Special Counsel went wrong here is they did not merely provide a safe harbor for employees and say what they could say. They went beyond that and threatened adverse action if they engaged in other activity. For instance, they explained that there is a presumption that the use of the term resist without anything else was political activity. And that is a threat, in our opinion, of future adverse actions to federal employees. With respect... Well, I mean, maybe so, maybe not. I don't know. But the whole ripeness thing is, the facts in this whole thing just haven't gelled to the point where you have a justiciable controversy. I mean, this is... Mootness and ripeness are really crucial elements to judicial restraint and to keeping courts within the bounds of their own jurisdiction. And, you know, it seems to me you're trying to lead us into the advisory opinion business, which is the very thing you complained about. And it's very flattering for you to think that we could provide some crystal clarity to all of these myriad questions that arise during the course of Hatch Act implementation. But I have to tell you, there are some judicial opinions, unfortunately, which are every bit as vague, if not vaguer, than what you're challenging here. And so we're just... It seems to me you're asking us to contribute to the very infirmity that you're challenging, and all without a concrete bed of facts. I mean, I always thought a lawsuit was to apply the law to the facts. And I don't know what the facts are here. It's all in the realm of conjecture. And that was what concerned Judge Zenas. Yes, Your Honor. It appears that my time has expired, but I would like to briefly respond. Please do. Yes, Your Honor. Our position in this case is that the case is right because federal employees should not be forced to risk their livelihoods in order to speak. You speak here about whether or not the advisory opinion actually provided what was vague enough, perhaps, to provide a justiciable controversy. But the principle here is about whether the federal employees would face a reasonable chilling effect. And the principle that we were discussing... But you can raise that question at a later point. You can raise that question if the MSPB is prosecuting. You can raise that question there, and you can raise that question before the Fourth Circuit, I mean, before the federal circuit. And, you know, there are plenty of times to raise that. But I think the idea that people are risking their livelihoods because they expressed a political opinion, that rarely happens. I mean, we're talking about... I think we're talking about a very theoretical risk. Your Honor, the precedent in this circuit is that government action will be sufficiently chilling when it is likely to deter a person from ordinary firmness from the exercise of First Amendment rights. Well, that's right, but they weren't dealing with a highly reticulated scheme, such as, you know, Congress has set up this scheme, and they passed the Hatch Act for a reason. And that is so that the people of this country could have a degree of confidence in the impartiality of the federal workforce. And, you know, it was a big, big deal when the first one of these acts, the Pendleton Act, was passed in 1883. And it was the signal of accomplishment of Chestall and Offa's presidential term. But the concept has lived on, which is that in return for the privilege of public service, people adopt, people are willing to accept a degree of restriction upon their normal liberties. There's nothing wrong with that. When those of us here and on the Fourth Circuit agreed to go on the Fourth Circuit, we were grateful for that privilege, and we agreed in exchange for that privilege to give up partisan activities. It's simply a restriction that we accept in order to give the public confidence in the judiciary. And much the same concept is at play in the Hatch Act. And I must say, the relevance of the Hatch Act does not seem to me to have faded because with all of the allegations that one reads regularly about partisanship in the Commerce Department and the Internal Revenue Service and the FBI and the Labor Department and everything, there is a greater need for a public service that people can trust as working generally for the public welfare and not consume bipartisan factionalism. And that's important to giving people a sense of faith and to be sort of jumping in at this very premature stage and fiddling around with the Hatch Act enforcement scheme and doing what seems to me to be a sexually designated business or congressionally authorized docket of a sister circuit. As I say, you know, come back to what I said, I think we are crashing a party. May not be a party, but we're crashing something. But, you know, I just like to lay bare what my, you know, I think you need to know, my reservations are, I think I need to, I think I need to be honest with you about that and let you respond. You tell me why I'm just wrong not to be concerned about this. I'm wrong to be concerned about this, about the Hatch Act's overall purpose of trying to preserve some semblance of impartiality on the part of our federal workforce. Am I wrong to be concerned about that? Your Honor, I do think you were wrong in the sense that while the Hatch Act was enacted to prevent partisan discussions in the workforce, the issue here is that the advisory opinion issued by the Office of Special Counsel goes beyond partisan activity. And Congress was also clear in the Hatch Act that federal employees do not lose their First Amendment rights. And those rights are meant to be preserved to the furthest extent possible. And our issue, as you mentioned, there is the opportunity to challenge this policy in front of the MSPB and potentially in front of the federal circuit. But that opportunity only arises after a federal employee has been faced with prosecution and forced to go through that ordeal. It is our position that federal governments should not be forced to go through that process in order to enforce their rights to speak. Well, maybe you should take that up with Congress. At any rate, you have some rebuttal time and I'm happy to have my colleagues raise questions with you if they have some. Judge Fraxley, would you like to ask counsel some questions? No questions right now. Thank you. All right. Judge Rushing? No, thank you. All right. All right. Let's hear from Mr. Mr. Stalker. Your Honors, and may it please the court, Jack Starcher on behalf of the Office of Special Counsel. Plaintiffs have made clear throughout this case that their challenge to this advisory opinion springs or sprung from the alleged chilling effects that opinion had on their members and their members desire to comment on certain topics covered by that advisory opinion. As has been made clear today, there is there is no dispute before this court at this time that the speech that plaintiffs members say that they want to engage in is no longer chilled by this advisory opinion because this advisory opinion by its terms no longer applies or covers the speech that they wanted to engage in, even assuming, as Judge Wilkinson pointed out, that that that that speech was covered at some time in the past. Plaintiffs only responses on on mootness are first to to propose a number of hypothetical future cases in which it is possible to imagine a future live case that presented a live controversy to to this advisory opinion or some future similar advisory opinion. But but this court's case law and then the Supreme Court's case law around mootness make clear that mootness cannot be overcome merely by by by presenting hypothetical future facts that that don't currently exist and might never come into existence. And plaintiff's second response on mootness, which is to invoke the voluntary cessation doctrine, simply doesn't apply here. This is not a voluntary cessation case. This is not a case where OSC made a decision to stop pushing forward with or or or holding out some regulation or policy. The change that mooted this case is a change that happened in the real world, separate and apart from any activity or decision made by OSC. And that change is that the 2020 election occurred and all individuals who were candidates for that that election no longer are candidates for partisan public office, which is the key on which this question turns. So for those reasons that this case is moot and and we would ask this court to dismiss it as such, I'm happy to take any questions if the panel has questions for me. Well, voluntary cessation doctrine doesn't apply to the situation where events have forced a change of some sort. That's what you're saying. That's that's right. This is this is this is voluntary cessation occurs when when the defendant usually somebody just elects as a strategic matter to duck out of the case because they think that they're facing an adverse ruling. But that isn't what's at play here. That's right. That's right. One of the concerns that undergirds voluntary cessation is the fear that the defendants you know will will in view of litigation make a decision to strategically stop doing something that they are then free to to restart at any time. There is nothing like that here. And of course this this advisory opinion is not free to restart quote unquote at any time because the state of the world has just changed. And so there is you know it obviously can't cannot show this speech anymore under the Hatch Act because of the part from the questions of mootness and rightness. Are we the proper forum to be hearing this? No I think I you know I think I think this is one of many points that the D.C. Circuit recognized long ago and in O'Connor and I think it remains correct that the nature of the Congress has created a scheme here. It is it is a comprehensive scheme that ultimately channels these sorts of Hatch Act violation issues through the Merit Systems Protection Board who the body that has the actual authority to to conclude whether or not any conduct does or does not violate the Hatch Act and then from the Merit Systems Protection Board through to the federal circuit. And so I think you know that that was one of several points that that the court in O'Connor made and and and that the district court here echoed as to why it is it is inappropriate sort of as a categorical matter for these kinds of advisory opinions to be reviewed by a district court under a constitutional First Amendment chilling or APA type challenge. I mean I'm just wondering about the broad implications if we were if every if every advisory opinion issued by some agency or board or is going to be you know challengeable like like this. What are the implications of it? I mean does that have the what about the the and I suppose that I suppose an IRS advisory opinion may be different than everything well because you're not dealing with an alleged First Amendment claim but there was still I think of all the different advisory opinions and if we would want to be cautious about saying that they gave rise to a justiciable controversy. I mean that it could be quite far-reaching. That's that's that's exactly correct Your Honor and you know as noted that the Supreme Court in upholding the constitutionality of the Hatch Act in this very instance why the Hatch Act is constitutional is because of the availability in the Hatch Act scheme for federal government employees to seek advice from the Office of Special Counsel and and if the Office of Special Counsel advises that certain speech is acceptable or is not violated not violative of the Hatch Act by that that provides a safe harbor so it's not just that that provides comfort that provides in fact legal protection against liability and and as you suggest I think that this case really demonstrates those sorts of concerns that you raise. This is a small office within the Office of Special Counsel. They issue you know over a thousand of these sort of advisory opinions every year. If you think about the nature of these advisory opinions it a great number of them conceivably could be you know sort of you could say oh well this this this has to do with speech therefore there's First Amendment you know challenges sort of in the ether and so if if every one of these advisory opinions was suddenly subject to First Amendment challenge in a district court there's no way that this office which again is what do we do to the congressional enforcement scheme and then and then on top of that right that there there's that that would totally invert and create a separate sort of parallel scheme that would exist in in federal district courts running through the courts of appeals writ large where you have an express you know intent expressed by statute for for these kinds of issues questions about whether or not conduct violates the Hatch Act for those issues to be channeled through the Merit Systems Protection Board and through the federal circuit and so I think that's an additional problem. One of the just impressions I've had and I'm not maybe my impression is wrong but my impression is that that OSC and Hatch Act generally is moving in the direction of giving federal employees greater speech rights within the within the office that maybe it doesn't go so far as to say advocacy probably can't go around soliciting funds or plastering bumper stickers all over your desk and proselytizing federal employees or your fellow employees. We have a rule incidentally in our courthouse that we don't want people who are employed there and in the parking lot to run around before election time with all kinds of buttons and partisan bumper stickers and the like but still you know we would want employees to be able to discuss the issues in an election and that's very constructive because they don't share their citizenship once they work for the federal judiciary but my feeling my sense of it is that the OSC and the MSPB are moving in the direction of allowing greater political expression. And I don't want to do something that would choke that up or choke that off because of the fear on the part of OSC that if they issued one of these advisory opinions every time they did so they were going to be hauled into court and so every time you can just see the office discussions going on well maybe we ought to issue this advisory opinion to let federal employees know that they can do this and engage in this kind of activity and that it's a safe harbor and somebody else in the room says oh no no don't do that you're going to give rise to a lawsuit. Now let's just keep our head down. And you could really erode something that's a very you know by and large is a useful practice. Isn't that a risk? I think that's exactly right and as you say you know I can't speak to any broader trends in OSC's desire to be more or less restrictive here but it is certainly correct that if these advisory opinions are ripe for judicial review in a district court on sort of first amendment challenges that is going to have a negative effect on OSC's ability and desire and willingness to respond to questions by members of the federal government who are usually reaching out to OSC you know genuinely looking for advice and comfort and guidance. And it would be I think you know problematic and would perversely you know result in greater chilled speech. The great laws of unintended consequences huh? I think that's right yes your honor. If there are any further questions I'm happy to answer them but otherwise I will leave the floor to Mr. Starcher. I have a question to ask you. If we were hypothetically to feel that the law would in the first amendment area would be applied differently to OSC and to those employees covered by the Hatch Act what legal principle would we rely upon to justify different treatment from your normal opinions issue for implicating first amendment rights issued by other agencies? What legal principle could we base our distinction on? I think rightness is the right principle there and specifically it's the idea. It can't be rightness. It's got to be some other justification for why this area this group this department or agency gets treated differently from other federal departments or agencies. They also issue opinions or rules regarding that affect first amendment rights. So I suppose one place the court could look is the Supreme Court's decision upholding the Hatch Act and this entire statutory scheme has always from the beginning raised special first amendment concerns and that the Supreme Court has and other courts have repeatedly upheld the existence of the Hatch Act which necessarily implicates first amendment rights of federal government employees on the basis and justification that federal government employment is a choice. There's sort of an implied agreement when federal government employees accept the privilege of being a public servant. Part of what comes with that privilege is the corresponding obligation to while on duty as a federal government employee to give up the ability to speak in certain ways. I think to the extent the court wants to create a rule specific to OSC and the Hatch Act I think within the context of the first amendment I think that rule already exists and is implicit in letter carriers being the seminal Supreme Court case recognizing that this context is different from contexts that are not federal employee specific. Thank you. That answers the question I asked. All right. Judge Reichling, did you have any further questions? I don't. Thank you, Judge Wilkinson. All right. Counsel, we are happy to  in rebuttal. Yes, Your Honor. Thank you. I would like to first briefly address mootness. OSC has a heavy burden of establishing mootness and in fact they had an opportunity to do so while this case was on appeal. Appellants agreed to dismiss this case as moot if the OSC in writing pledged not to prosecute any of appellants members. I don't understand how the voluntary cessation doctrine applies here because after the election you had a wholly different set of circumstances and a wholly different sort of cast of characters and a different set of  The resistance being one and a second one being the impeachment proceedings. And why is it not a reasonable argument to dismiss this case as  It's a reasonable thing for the OSC to issue an opinion, an advisory opinion which addresses itself to those circumstances.  honor, with respect to impeachment circumstances certainly did change. However, OSC's rationale in preventing the use of the term resist was that the use of  term was not appropriate to the democratic party as it was before the election and its use would be political speech. Moreover, there is a second reason that this case is not moot and that is that plaintiff's members still face some risk of prosecution. A case is not moot as long as a court can provide any effectual relief and protection for any one of appellant's 600,000 members would be effectual relief in this case. Now I would like to move to briefly discuss the arguments on rightness. I would first say that this is case offered by the Supreme Court. I would like to say that the        is right. And I would simply say that the question in this appeal is very narrow and it is whether this claim is right. And the structure of the hatch act and the system that Congress set up, the value of the hatch act is not an issue. The question is whether government employees can ever challenge an opinion by the hatch act threatening prosecution for expressing first amendment rights. If the answer is no, then there is no reason to limit that principle to cases here where it might be, in your opinion, Judge Wilkinson borderline. The OSC could issue an opinion that says that any discussion of any government policy can never challenge it. You certainly can challenge it if in the unlikely event, and I can't imagine it, that the MSPB were to initiate a prosecution because someone had expressed an opinion on impeachment, you could certainly raise it defensively and it would probably be dismissed pretty easily. The prosecution would probably be peremptorily dismissed. But you can challenge these things, I think. You know, all the time, there are informal ways of challenging this kind of thing and to raise questions within the agency and say this doesn't make sense. It doesn't have to be an actual courtroom challenge. Many, many times rules and opinions are changed through internal deliberations. So that's another way you can challenge it. A third way you might be able to challenge it is if in addition to defensively before the MSPB and in addition to internal discussions and dialogues, which very often produce changes that the litigation is designed to bring about. And the third way you can challenge it is if there was something more concrete maybe before us. But I think this was what plagued Judge Zenes is we just don't know what speech is there, what sanctions are imposed, what, you know, the  it's I think the phrase your opposing number issue was talked about was in the ether. And, you know, at some point things become abstract to a certain degree that you just as a court you feel a little bit uncomfortable getting into it. Because you just say, you know, this is abstract. And it's sort of this is irony, isn't there, counsel, that in an effort to challenge an advisory opinion you are asking us to issue something that might resemble an advisory opinion. Maybe the term is irony or maybe the term is paradox, but isn't that present? No, Your Honor, we are not asking the court to issue an advisory opinion. And in its appeal the only thing we are asking is to find that this case is right. This is a pre set  And the court has no choice but to risk their livelihoods before they can speak. And that is not as Judge Traxler mentioned. No, what I'm saying is I think if you say the minute an advisory opinion is issued, that just on the basis of that and sort of speculative and conjectural assumptions about what might follow, you can automatically go into federal court with a pre-enforcement challenge even though the facts have not gelled beyond a very abstract level. And if we opened up advisory opinions to that extent, given the prevalence of the practice throughout the country, I think it puts the  an awkward position vis-a-vis the executive branch generally and more specifically as opposing counsel has recognized, we are doing real, we run a real risk of doing real damage to the congressionally set-up scheme, which the Supreme Court has said, has blessed and has not, you know, the Supreme Court has had plenty of chances through the years to say that the Hatch Act is unconstitutional in some sort of way, but they haven't done that. Even after all these years, it's still, you know, it's still the books and Lord knows there's been no dearth of challenges. Yes, Your Honor, but those challenges were not dismissed for lack of rightness. They were dismissed and this case was not dismissed on a 12B6. Opposing counsel mentions the Supreme Court's decision in letter carriers as a reason to, I guess, create new First Amendment law for federal employees, but this case was not dismissed because a challenge to the Hatch Act is not a claim. Well, that's what's underlying it. Your Honor, that would be a different conversation than rightness. Rightness in this circuit can be established by self-censorship, a reasonable fear of adverse consequences for speaking and federal employees. Yes, Your Honor? Let me just say to you that the boundaries of rightness and mootness are not infinitely elastic. Yes, Your Honor, of course, but the question here is a reasonable fear of prosecution such that an employee would Well, if the question is a reasonable fear of prosecution, they've just issued an advisory opinion that says you can do it. So how is there a reasonable fear of prosecution right on the heels of an advisory that says this is permissible activity? If that's your formulation, that just collapses under the particular facts and given the particular opinion that OSC has just issued, huh? Well, Your Honor, we have found no cases where activity performed by the defendant after the commencement of a case can make an otherwise right case unripe. No, it can. I mean, we have an obligation to assess ripeness our own jurisdiction as it stands today. And the Supreme Court has indicated, I mean, since the 70s, the Supreme Court has talked about ripeness is time sensitive. It's evaluated at the time of   case. So, Your Honor, we would contend that we still have a credible threat of prosecution. Plaintiffs, employees, over 600,000 of them, um, for speaking while the policy was in effect. There has been no opportunity to Where's the allegation about who did  about the policy? Well, Your Honor, plaintiffs filed everything necessary to make their claim at the time the case was filed. It would be improper to file affidavits in an appeal to make that case now. If this court remands back to the district court              going to file an appeal to make that case now. So, Your Honor, we would contend that we still have a credible threat of violation   policy. We would like to make evidence in the  that employees have already violated the policy. All right. We thank you both. Um, and, um, I think we'll, um, we'll adjourn court and I very much appreciate your respective arguments in this case. And we will adjourn court and, um, go into conference. This Honorable Court stands adjourned until tomorrow. God save the United States and this Honorable Court.
judges: J. Harvie Wilkinson III, Allison J. Rushing, William B. Traxler Jr.